### LEARY v. FITCHBURG R. CO.

(Supreme Court, Appellate Division, Third Department. June 28, 1900.)

1. RAILROADS—DEATH AT CROSSING—CONTRIBUTORY NEGLIGENCE—DISMISSAL.

Plaintiff's decedent, an intelligent girl, 12 years old, was killed while crossing defendant's railroad track, with which she was familiar, at the end of a freight train which was obstructing a street. A witness testified that he was near by, and did not hear the bell of the approaching train which killed deceased, which was a regular train, which had been coming in at that time for several years, but that he was not listening for it, and that the train was running 10 miles an hour. Deceased could have seen the approaching train before going on the track, if she had looked. *Held*, that the case was properly dismissed for the want of evidence showing negligence on the part of the defendant, and because the evidence shows contributory negligence on the part of plaintiff.

2. SAME—EVIDENCE—CUSTOM.

In an action for the death of one who was killed while crossing a railroad track at the end of a freight train which was obstructing a street, evidence that people were accustomed to cross the tracks at the end of the train when a freight train was obstructing the street is admissible, as bearing on the question of the care which should have been exercised by the railroad company, which knew of and acquiesced in the custom.

Appeal from trial term, Rensselaer county.

Action by Dennis O. Leary against the Fitchburg Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The action was for negligence causing the death of the plaintiff's daughter. On November 24, 1898, the plaintiff's intestate, a bright, intelligent girl, 12 years and 2 months of age, while on her way to school, in attempting to cross the tracks of the defendant's road, in the village of Hoosick Falls, was struck by the locomotive engine of a passenger train, and received injuries from which

she died on the same day. The residence of her parents was on First street, on the westerly side of defendant's road; and the school was a quarter or a half mile distant, on the easterly side of defendant's road. Her route from her home to her school, after reaching Elm street, was easterly along that street across Railroad avenue, which runs north and south, and on which are the defendant's tracks. She had been in attendance at this school about seven or eight years, and had also frequently crossed the road when on errands for her grandmother, who lived on Railroad avenue, westerly of the defendant's road. On the day of the accident she left her parents' home at about five minutes before 1 o'clock in the afternoon for her school, which opened at 1:15 p. m. She stopped at her grandmother's house, and, after leaving there at about 1:05 p. m., came to the Elm street crossing, which she found obstructed by a freight train of the defendant, standing on the siding west of the passenger track. The south end of this freight train was a considerable distance below Elm street, and the locomotive at the north end of the train was 105 feet north of Elm street, and about 25 feet north of the baggage room connected with the passenger station of the defendant, which is on the east side of the track. Being unable to cross the tracks at Elm street, she turned and ran northerly along the west side of the freight train until she came to the front of the locomotive of that train, when she turned, crossed in front of the locomotive, looking down, running, watching her steps over the rails, and over the intervening space of 4 feet, then upon the passenger track, and when in the middle of that track she was struck by the locomotive of the passenger train going north, in the same direction that the freight train was headed. The escaping steam from the freight locomotive was making a loud noise. The passenger train was the one due at that station at 1:07 p. m., had been coming in there at that time from that direction for several years, and was on time that day. Its speed was 10 miles an hour. Between the track of this passenger train and the siding westerly on which the freight train stood was a space of 4 feet, and a person standing on the siding, or just east of the east rail of the siding, could see southerly in the direction in which the passenger train was coming a distance of over half a mile. The plaintiff's intestate in crossing the tracks was running, looking down, and did not look up or in either direction, unless, perhaps, while she was in the middle of the passenger track, just as she was struck by the train. The only person who witnessed the accident describes her conduct when in the center of the passenger track as follows: "She kind of glanced to the one side. Didn't raise her— To the south side; and as she did she made kind of a step and turned her body, in that motion [indicating], away from the approaching engine; and that was then the last I saw of her until after she was run over." For the purpose of showing that before the accident the people living on the westerly side of the defendant's road, and who had occasion to cross at Elm street, were accustomed, when they found the crossing blocked by a freight train, to go around the end of the freight train, the plaintiff's counsel asked the following questions of witnesses, which, under the objections of the defendant, were excluded by the court, and the plaintiff excepted: "Q. Had you before this day seen freight trains blocking Elm street at this point? And, if so, how frequently?" "For some years before the accident, were the public, in coming down (that is, coming east on) Elm street, accustomed to going around the end of a freight train that blocked the crossing?" "Q. Where are most of the stores and shops and schools and churches?" "Q. Did you ever see a freight train standing there, blocking the highway?" "Q. How frequently?" "Q. Previous to the occasion (that is, the time of the accident; any occasion), had you, or had you not, seen the public go around the end of a freight train which blocked that highway? If so, how frequently?" "Q. Previous to the day of the accident, had you yourself, walking along Elm street, gone around the end of a freight train that blocked Elm street? If so, how frequently?"

Argued before PARKER, P. J., and MERWIN, SMITH, KELLOGG, and EDWARDS, JJ.

G. B. Wellington, for appellant.

T. F. Hamilton, for respondent.

EDWARDS, J. I am of opinion that the learned trial justice properly disposed of the defendant's motion for a nonsuit. The evidence was insufficient to authorize the submission to the jury of the question of the defendant's negligence, or the absence of contributory negligence on the part of the plaintiff's intestate. Before considering the evidence of the defendant's negligence, we should determine whether any offered by the plaintiff on that question was erroneously excluded, and, if so, should give it the effect it would have had, if it had been admitted. The place where the deceased attempted to cross the tracks of the defendant's road was not a regular crossing, and the plaintiff's counsel sought to show that people living on the westerly side of the tracks, and having occasion to cross at Elm street, had been accustomed, when a freight train was obstructing Elm street, to cross the tracks at the end of the train. I think such evidence was proper, as bearing on the question of the degree of care which should be exercised by the defendant, knowing and acquiescing in such custom. The questions in the foregoing statement of facts were evidently asked with a purpose of showing such custom. They were proper in form, and I think the witness should have been permitted to answer them, except the one, "For some years before the accident, were the public, in going down (that is, coming east on) Elm street, accustomed to going around the end of a freight train that blocked the crossing?" which may be objectionable. We should therefore regard the custom sought to be shown as proven.

A ground of negligence alleged in the complaint, and of which evidence was given on the trial, was that the defendant's freight train at the time of the accident had obstructed Elm street for a longer period than five consecutive minutes, in violation of section 421 of the Penal Code. Whether the violation of this section was an act of negligence, causing in part the injury to the plaintiff's intestate, need not be considered, for the reason that the evidence is insufficient to warrant a finding that there was an obstruction for more than five minutes. Two witnesses testified as to the time the freight train was blocking Elm street. One of them says that when she went to the front door the freight train was standing on the west track, and that she is quite sure it was standing there when the plaintiff's daughter was run over, which, in her judgment, was five minutes or more; but upon her cross-examination she says that she did not see the plaintiff's daughter that day when she attempted to cross the track, did not see her until after the accident, and did not look at her watch or clock, to tell how long the train had been there. It was the merest guess,—an opinion without any basis. The other witness, who is the only person who witnessed the accident, on his direct examination says:

"It stood there, blocking Elm street, all the time that I was there at the depot. My best recollection of it is, a little over five minutes. I can't tell just exactly."

On his cross-examination he says:

"It was there when the passenger train whistled. Stood still over the crossing. That was the first time it stood still when the whistle blowed on the passenger train. Then it stood still from the time the passenger train whistled

until the passenger train came in. I don't know whether that was five minutes. I didn't take my watch."

This witness had testified that the whistle of the passenger train blew at the whistling post, half a mile distant, and the train, when it reached him, was running at the rate of 10 miles an hour; so that, if the freight train stopped at Elm street crossing when the whistle blew, it could not have been there more than three minutes at the time of the accident. The attention of the witness evidently having been called to this fact, he said:

"I don't think, at that rate of speed, it would take that train five minutes to come from the whistling post down there,—that passenger train. That train could not have been standing there on that crossing five minutes before that train came in."

There was a failure of proof by the plaintiff that the passenger train was not giving proper precautionary signals of its approach. There was but one witness on this question. To him the following question was put: "You may state whether the passenger engine bell was ringing at that time." He answered: "No, sir; I didn't hear it." On his cross-examination he said: "I didn't hear any bell. I wasn't listening. I wasn't anticipating anything. I didn't listen for a bell." This mere negative evidence is without any value.

The remaining fact is the speed of the train, which, although the accuracy of the inexperienced witness may be doubted, we must assume to have been 10 miles an hour. Our attention has been called to a class of cases holding that the running of a train at a high rate of speed through a crowded or thickly-populated locality in a city or village is evidence of negligence to be submitted to a jury. But this case is not within that rule. Here the train was running at the low rate of 10 miles an hour, and, in the absence of evidence that timely warning of its approach was not given, the jury would not have been authorized in finding that that rate of speed, under the circumstances, was negligence.

I am also of the opinion that the complaint was properly dismissed for want of evidence that the plaintiff's intestate was free from contributory negligence. She was, beyond question, sui juris; and, although she might not be held to the same degree of care as an adult, yet she was bound to exercise such care and caution as might be reasonably expected of a person of her years, intelligence, and experience; and the burden was upon the plaintiff to show the exercise of such care. · Reynolds v. Railroad Co., 58 N. Y. 250; Tucker v. Railroad Co., 124 N. Y. 308, 26 N. E. 916; Thompson v. Railway Co., 145 N. Y. 196, 39 N. E. 709. The evidence fails to show the exercise of any care by the deceased for her protection, and is convincing of her negligence. She was a bright, intelligent girl, over 12 years of age; had for 7 or 8 years been accustomed to crossing the tracks of the defendant's road in going to and returning from school; and had frequently crossed in doing errands for her grandmother. The freight train on the siding obstructing Elm street was not unusual, and the passenger train was one that had for several years been coming in there at that time. With these facts, and with the situation generally, she must have been familiar. She was on

her return to school, which opened about 1:15 p. m., and, finding Elm street blocked, she ran northerly along the westerly side of defendant's freight train, standing on the siding, then turned, and, running, crossed the track in front of the engine of that train, with her head down, over the intervening space of four feet, and upon the passenger track, in the middle of which she was struck by the locomotive of the passenger train. It was a bright, clear day, and it is undisputed that on the easterly rail of the siding she could have seen the approaching passenger train at a distance of half a mile. There is not the slightest evidence of the exercise of any degree of care. If she looked at all for the approaching train, which is quite doubtful, it was not until she was in the center of the passenger track, when the train was upon her, and it was too late. In her commendable desire to arrive at school in time, she became unmindful of the danger which she should have apprehended, and suffered the lamentable consequences of her thoughtlessness. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur; PARKER, P. J., and KELLOGG, J., in the result.